IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY MCKENNEY, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 8:09-cv-02916-AW |
| | * | |
| UNITED BANK, *et al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

**********************************************************************

**MEMORANDUM OPINION**

Plaintiffs Larry McKenney, LNM Enterprises, Inc., and LNM Corporation bring this action against Defendant United Bank ("Bank").[1] Pending before the Court is Defendant's Motion to Dismiss (treated as a Motion for Summary Judgment).[2] Doc. No. 16. The Court has reviewed the entire record and finds that no hearing is necessary. *See* D. MD. LOC. R. 105.6 (2010). For the reasons set forth below, the Court DENIES Defendant's motion.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

The following facts are not in dispute unless specifically indicated. Plaintiff Larry McKenney was the title owner of real property located at 7571 Lindbergh Drive in Gaithersburg, Maryland. The Defendant held a first deed of trust on the property to secure loans from the Bank

---

[1] United Bank argued in its motion that it acquired Defendant Patriot National Bank ("Patriot") on August 1, 1997, and that Patriot no longer exists as an entity. Plaintiff never disputed this point, so the Court will terminate Patriot as a Defendant.
[2] Initially, Defendant's motion was framed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), but because Defendant relied on matters outside the pleadings, the Parties have agreed to convert it into a motion for summary judgment.

1

to the Plaintiffs. In late 1996, Defendant instituted foreclosure proceedings on the Plaintiffs' property.

In 1997, Defendant and the Plaintiffs resolved their dispute by entering into an arrangement that involved the purchase of Plaintiffs' property by an individual named Devin Battley. Battley purchased the property and entered into an agreement with one of McKenney's companies, LNM Corporation, in which LNM corporation would have the option of repurchasing the property for a certain price. Plaintiffs allege that Battley and the Bank also entered into a secret agreement, memorialized in a letter dated January 21, 1998, that Battley would "not . . . sell the property to Mr. McKenney . . . until such time as United Bank agrees that all debts of Mr. McKenney . . . have been satisfied." Doc. No. 27, Ex. A (Letter by Theodore P. Lauer, Senior Vice President, United Bank, to Devin Battley).

When Plaintiffs attempted to exercise their option to reacquire the property, Battley refused to sell. On December 15, 2002, McKenney wrote Battley to "get back to what [Battley] told [McKenney] about Ted and Michael making [Battley] promise not to sell [McKenney] the building back at any cost." Doc. No. 35, Ex. A (Letter by Larry McKenney to Devin Battley). McKenney claims that he investigated the information Battley told him about an agreement with the Bank by asking Battley for written proof and by contacting the Bank for verification. McKenney claims that this investigation proved fruitless, leading him to conclude that Battley's claim was "frivolous boasting." Doc. No. 35, Ex. B.

Plaintiffs filed suit against Battley for breach of contract in 2006 and were represented by Attorney Sean Malloy. Battley was represented by Richard Mirsky. After a document production request, Malloy arrived at Mirskey's office on October 19, 2006 to inspect documents pertaining to the Plaintiffs' litigation against Battley. According to Mirsky, Malloy spent more

2

than three hours reviewing documents and selecting certain ones to be copied for his own files. *See* Doc. No. 17, Ex. B at ¶ 5. According to Malloy, when he arrived for inspection, the documents were piled together in a large, disorganized sack, and he did not analyze them at that time, but merely eliminated those that seemed to have no relation to the case. *See* Doc. No. 27, Ex. A at ¶ 4.

Plaintiffs claim that it was not until November 14, 2006 that Malloy, along with McKenney, first discovered the 1998 Bank-Battley letter when they sat down to review the documents. *Id*. at ¶ 5. Plaintiffs immediately amended the complaint in the Battley litigation to include a fraud claim on November 17, 2006. *Id.* Plaintiffs filed the present action against Defendant United Bank on November 3, 2009 alleging fraud relating to the sale of the property. Defendant filed a Motion to Dismiss (treated as a Motion for Summary Judgment) based on the statute of limitations. Doc. No. 17.

## II.STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**III. ANALYSIS**

Defendant argues that Plaintiffs were legally on notice of the existence of an allegedly fraudulent agreement between Battley and the Bank prior to November 3, 2006, and therefore Plaintiffs' November 3, 2009 filing of the complaint in this action is barred by the statute of limitations.

Under Maryland's discovery rule, the three-year statute of limitations period begins to run when the "plaintiff discovers or, through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000). The plaintiff's actual knowledge of the fraud is not required; the plaintiff need only be on inquiry notice to run the limitations period. *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1104 (Md. 2004). Inquiry notice means having knowledge of circumstances that would cause a reasonable person in the plaintiff's position to undertake an investigation which, if pursued with due diligence, would have led to knowledge of the alleged fraud. *Frederick Rd. Ltd. P'ship.*, 756 A.2d at 975. Once a plaintiff has knowledge of facts that would cause a reasonable person to investigate, the commencement of the statute of limitations is not postponed to allow time for the investigation to occur. *O'Hara v. Kovens*, 503 A.2d 1313, 1317 (Md. 1986).

Defendant raises two distinct arguments: 1) Plaintiffs were on notice prior to 2006 as evidenced by the December 15, 2002 letter written by McKenney to Battley inquiring about the alleged Battley-Bank agreement and McKenney's reference to the Battley-Bank agreement in a 2005 deposition, and 2) Plaintiffs were on notice, at the latest, on October 19, 2006, when their attorney received the 1998 United Bank letter memorializing the allegedly fraudulent agreement. The Court will address both arguments in turn.

### A. Notice Prior to 2006

Defendant claims that Plaintiffs were on notice of the alleged agreement between the Bank and Battley prior to 2006. First, Defendant relies on the letter written by McKenney on December 15, 2002, in which he follows up with Battley about a "promise" by Battley "not to sell [McKenney] the building back at any cost." Doc. No. 35, Ex. A. Second, Defendant references McKenney's 2005 deposition testimony in which he states that he "talked about [exercising his option to repurchase], . . . and [Battley] told [him] some things about former guys for Patriot, that they made [Battley] promise not to sell the building back to [him]." Doc. No. 30, Ex. C at 146. Defendant argues that both of these documents evidence McKenney's knowledge of the allegedly secret agreement prior to November 3, 2006.

Although the Court agrees with Defendant that Battley's comments to McKenney created an obligation (for statute-of-limitation purposes) on the part of McKenney to conduct a reasonable investigation into Battley's claims, that conclusion does not end the analysis. Inquiry notice means knowledge of circumstances that would cause a reasonable person in the plaintiff's position to undertake an investigation which, if pursued with reasonable diligence, would lead to knowledge of the alleged fraud. *Frederick Rd. Ltd. P'ship.*, 756 A.2d at 975. However, "a

5

diligent plaintiff need not engage in ceaseless inquiry when reasonable inquiry does not expose grounds for a suit." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007).

McKenney states in his affidavit that he responded to Battley's claims by conducting a reasonable investigation. He recalls that he asked Battley for written verification of the agreement with the Bank, and that Battley "produced nothing." Doc. No. 35, Ex. B at ¶ 5. He also states that he contacted the Bank and asked about the agreement, only to learn that the officers allegedly involved in the deal "had left the bank in 1999 and were not available," and that the Bank had no written record of any agreement. *Id.* at ¶ 4. Based on these facts and his prior interactions with Battley, he considered Battley's claim of a secret agreement to be "frivolous boasting," and he claims that he did not come across any weighty evidence of fraud until the November 14, 2006 meeting where he and Malloy discovered the 1998 letter. *Id.* at 3-5. These allegations are sufficient to create a genuine dispute of fact regarding whether McKenney discharged his obligation to conduct a reasonable investigation, which is a material fact because the answer to that factual question determines whether or not he was on inquiry notice.

### B. Notice on October 19, 2006

Defendant argues that notice was imputed to the Plaintiffs when their attorney, Malloy, was put on notice of the 1998 letter and its contents when he reviewed the letter, along with other documents, and tabbed it for copying on October 19, 2006. The Defendant stresses that the 1998 letter is a one-page, two-sentence document, and that it was directly addressed to Devin Battley, the defendant in the 2006 litigation. Because the letter was short and simple, and because Malloy allegedly spent over three hours reviewing and tabbing the documents, Defendant

contends that Malloy either knew or should have known the letter's contents on the date he received it.

Even assuming, without deciding, that notice to an attorney can be imputed to the client,[3] reasonable jurors could disagree as to whether Malloy was on notice of the alleged Bank-Battley agreement. Malloy states that he did not review any of the documents in detail, and that his main goal on October 19 was to sort through documents and copy any that pertained to the ongoing Battley-Mckenney litigation, not to read the documents or process their significance. *See* Doc. No. 27, Ex. B at ¶ 4. Malloy claims that he was given a sack of over 500 disorganized documents. *Id.*

In light of these facts, jurors could disagree as to whether Malloy's tabbing of the 1998 letter was sufficient to place Malloy on inquiry notice of fraud claims against United Bank. In order for the statute of limitations to run, Plaintiffs "must be aware that a tort has occurred and not merely that an injury has occurred." *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1160 (Md. 1988). An action accrues when the "nature and cause of the injury," and not merely when the nature of the injury, are known or should have been known. *Id*. Malloy's allegedly cursory review of documents in a breach-of-contract action against Battley might not prompt a reasonable person to conduct an investigation into a different defendant—the Bank—on a different legal theory: fraud. Thus, a jury will need to decide whether Plaintiff's claims are barred by the statute of limitations, and Defendant's motion will be denied.

## IV.     CONCLUSION

---

[3] The Court need not address the issue of whether notice to an attorney is imputed to the client, because even if notice ought to be imputed, the Court finds that there is a genuine dispute of fact regarding whether the attorney was on actual or inquiry notice of the fraud. *See infra*.

For the reasons stated above, the Court DENIES Defendant's Motion to Dismiss (treated as a Motion for Summary Judgment), Doc. No. 16. A separate Order will follow.

|   November 29, 2010   |   /s/   |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |